| | |
|---|---|
| BALD HEAD ISLAND LIMITED, LLC; ) <br> MITCHELL ISLAND INVESTMENTS, ) <br> Plaintiff, ) <br> ) <br> v.   ) <br> ) <br> IRONSHORE SPECIALTY INSURANCE ) <br> COMPANY, ) <br> Defendant. ) | ORDER |

This cause comes before the Court on defendant's motion to dismiss [DE 7]. Plaintiff responded in opposition, defendant replied, and the motion is ripe for adjudication. For the reasons that follow, defendant's motion is denied with prejudice in part, denied without prejudice in part, and granted in part.

## BACKGROUND

On or about September 14, 2018, Hurricane Florence damaged certain business property owned by plaintiff on Bald Head Island, North Carolina. Plaintiff, Bald Head Island Limited, LLC and Mitchell Island Investments, held a commercial property insurance policy effective from March 8, 2019 to March 8, 2019. The policy allegedly insured plaintiff's business property and business operations with a principle location at 8 Marina Wynd, Bald Head Island, North Carolina. Plaintiff had paid all premiums on the policy and the policy was in full force at the times relevant to this suit.

Hurricane Florence allegedly caused over $945,000 in direct physical damage to the plaintiff's covered property, which caused plaintiff to sustain business income loss to its real estate brokerage and real estate development operations. The civil authorities of Bald Head Island

Village restricted access to the insured property for some period of time due to the hurricane conditions. Plaintiff alleges that the hurricane caused damage to its property; denied access to the property; prevented customers, investors, residents, and potential buyers from physically occupying the property; caused the property to be physically uninhabitable to customers, investors, residents, and potential buyers; caused the function of plaintiff's real estate brokerage and real estate development operations to be nearly eliminated or destroyed; and a suspension of business operations on the premises. Plaintiff also alleges that it suffered direct physical loss of or damage to its property in the form of diminished value and lost income. As a result of damages sustained to the insured property from Hurricane Florence, plaintiff allegedly sustained a suspension of business operations, sustained losses of business income, and incurred extra expenses for the losses specifically sustained to the real estate brokerage and development operations

Plaintiff promptly notified defendant of the losses. Defendant then assigned the independent adjusting firm Sedgwick to investigate and adjust plaintiff's claims. After defendant's purported investigation, defendant issued payments of approximately $702,929 for Loss of Business Income/Extra Expense. Plaintiff alleges that this amount did not include owed policy benefits for lost business income to plaintiff's real estate brokerage and real estate development operations. On November 21, 2019, defendant, through Sedgwick, informed plaintiff that it was denying coverage for the business income loss associated with the Developer for Real Estate and Brokerage Real Estate portion of the claim. Specifically, defendant allegedly excluded coverage for the loss of business income incurred as a result of unfavorable business conditions caused by the impact of a covered cause of loss.

On December 19, 2019, plaintiff informed defendant that defendant's denial of coverage was improper. The parties corresponded from November 2019 through August 2020, disagreeing

on whether the claimed damaged was covered by the policy. Plaintiff alleges that defendant failed to properly investigate the damage and ignored evidence that plaintiff presented. At some point, plaintiff retained the accounting services of Pyxis to prepare an analysis of the lost business income, including lost real estate revenue less non-continuing expenses. Pyxis estimated Plaintiff's financial loss of real estate revenue at a total amount of $1,231,971.

On September 10, 2021, plaintiff filed this suit in Brunswick Superior Court. Plaintiff alleges three causes of action: breach of contract (Count I), violation of North Carolina's Unfair and Deceptive Trade Practices Act (Count II), and breach of the common law obligation of good faith and fair dealing (Count III). Defendant removed this case to federal court based on diversity jurisdiction on October 18, 2021. On October 21, 2021, defendant filed a motion to dismiss plaintiff's complaint. Plaintiff responded in opposition and defendant replied. A hearing on the motion to dismiss was held before the undersigned on June 16, 2022 in Elizabeth City, North Carolina.

## DISCUSSION

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the

factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The complaint must plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## I. Suit Limitation Provision

Defendant argues that plaintiff's claims are subject to a one-year suit limitation provision in the insurance policy and pursuant to the North Carolina Surplus Lines Act. N. C. Gen. Stat. § 58-21, *et seq.* Plaintiff argues that the insurance contract is governed by the "Standard Fire Insurance Policy for North Carolina" prescribed by N.C. Gen. Stat. § 58-44-16, which contains a three-year statute of limitations.

"Affirmative defenses such as a statute of limitations defense can only be reached on a motion to dismiss 'if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Bankaitis v. Allstate Ins. Co.*, 229 F.Supp.3d 381, 384 (M.D.N.C. 2017) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). A "defendant may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." *Hatcher v. Flockhart Foods, Inc.*, 161 N.C. App. 706, 709 (2003) (quotations and citation omitted). This Court examines parties' arguments under North Carolina's substantive law because this Court has subject matter jurisdiction in this action based on diversity of citizenship. *See Castillo v. Emergency Med. Assocs.*, 372 F.3d 643, 646 (4th Cir. 2004).

4

Plaintiff's insurance policy states that "[a]ny suit against [Ironshore] must be brought within one (1) year after the date on which the direct physical loss or damage occurred, or the shortest time permitted by law, whichever is greater." Plaintiff's Exhibit 3 p. 8 [DE 1-3]. Plaintiff filed its complaint on September 10, 2021 reporting damaged allegedly caused by a September 14, 2018 hurricane. This filing date would be beyond a one-year period but within a three-year statute of limitations. Facts alleged in the complaint state that Ironshore had not yet completed the insurance adjustment process when the one-year deadline suit limitation deadline passed.

"North Carolina law allow[s] the parties to contractually agree to shorter limitations periods than those provided by statute" so long as the period of time is reasonable and not proscribed by a statute. *Badgett v. Fed. Express Corp.*, 378 F.Supp.2d 613, 623-25 (M.D.N.C. 2005). This insurance contract is governed by the North Carolina Surplus Lines Act, N. C. Gen. Stat. § 58-21, *et seq*, because Ironshore is a non-admitted insurer providing surplus lines insurance. Plaintiff's Exhibit 3, p. 2 [DE 1-3].[1] The Surplus Lines Act does not contain a statute of limitations for surplus lines insurance. Therefore, the parties are permitted to draft their own suit limitations provision, so long as it is not unreasonable. *See id.* at 623-25; *Johnson v. ADT Security Systems, Inc.*, 1999 WL 1940046, at *4 (W.D.N.C. Mar. 10, 1999).

In order to determine the time period by which plaintiff would have needed to file, the Court must determine what the "shortest time permitted by [North Carolina] law" is as it pertains to this contract. Without statutory guidance on a reasonable time period from the Surplus Lines Act, the Court must rely on an examination of the time periods that North Carolina courts have

---

[1] Contrary to plaintiff's arguments, the Standard Fire Insurance Policy, N.C.G.S. § 58-44-16, does not apply to this insurance contract because Section 58-21-2 of the Surplus Lines Act states that "[e]xcept as provided in G.S. 58-2121(c) and (g), unless . . . non-admitted insurers are specifically referenced in a particular section of this Chapter [58], no sections contained in Articles of this Chapter other than this Article [21] apply to . . . nonadmitted insurers." N.C.G.S. § 58-21-2.

5

found reasonable and enforceable. North Carolina courts regularly enforce contract limitation provisions of one year, sometimes even less. *See Beachcrete, Inc. v. Water Street Center Associates*, LLC, 172 N.C. App. 156, 159-60 (2005) (upholding one-year suit limitation provision in contract); *Sanghrajka v. Family Fare, LLC*, No. COA 18-164, 2019 WL 438314, at *3 (N.C. Ct. App. Feb. 5, 2019) (enforcing a one year contractual limitation period in a franchise agreement); *Beard v. Sovereign Lodge, W. O. W.*, 184 N.C. 154, 156 (1922) (enforcing a 90-day limitations clause in a certificate of insurance); *see also* N.C.G.S. § 168A-12, § 130A-148(i), § 1-55 and § 95-242 (all of which uphold a 180-day time limit within which to bring civil actions). Accordingly, the shorted time permitted by North Carolina law could be a year or shorter.

Under the insurance policy at issue in this case plaintiff may file a suit either within a year or within a time period shorter than a year (as permitted by North Carolina law), whichever is longer. Accordingly, the insurance contract has an enforceable suit limitation provision of one year, because that is the longer period. The one-year suit limitation provision applies to all of plaintiff's claims because they clearly arise out of the contract between plaintiff and defendant. *See Ireifej v. Travelers Cas. Ins. Co. of America*, 2021 WL 4133948, at *4 (M.D.N.C. Sept. 10, 2021) (holding that when extra-contractual claims arise from the insurance contract, those extra-contractual claims are subject to the same time period limitation as set forth in the contract).

The Court must next determine whether defendant is barred from raising this affirmative defense. "[A]n insurer can be estopped, by its own conduct or words during the limitations period, from asserting the contractual limitation period as a bar to plaintiff's action." *Marshburn v. Associated Indem. Corp.*, 84 N.C. App. 365, 374 (1987). The North Carolina Supreme Court in *Meekins v. Aetna Insurance Company* found that an insured plaintiff's complaint alleged sufficient facts to state a claim for equitable estoppel when the complaint alleged that the defendant insurance

6

company was responsible for the delay in filing a proper proof of loss, which caused the claim to only become payable after the 12-month suit limitation provision. *Meekins v. Aetna Ins. Co.*, 231 N.C. 452, 457 (1950). Similarly in this case, plaintiff has stated that defendant's delay in completing the investigation and adjustment process caused plaintiffs to delay filing this suit.

Plaintiff's complaint in this case alleges that plaintiff promptly notified defendant of the loss and that defendant began to investigate and adjust plaintiff's insurance claims through Sedgwick, an independent adjusting firm. The complaint alleges that it was not until November 21, 2019, after the one-year deadline of September 14, 2019 had passed, that defendant denied coverage for the business income loss associated with the Developer for Real Estate and Brokerage Real Estate portion of the claim. This denial of coverage serves as the basis for plaintiff's suit. The facts in the complaint lead to the logical inference that it was the actions of the defendant itself that delayed the filing of this suit beyond the one-year suit limitation period. It cannot be true that Ironshore would wish plaintiff, who was allegedly participating in the adjusting process in good faith, to abort the adjustment process before it was finished and file suit prior to the coverage being denied. The complaint on its face alleges facts sufficient to claim that defendant, through its words and actions in failing to adjust the claim before the one-year period had passed, "induced [the] plaintiff to delay filing suit." *Hatcher*, 161 N.C. App. at 709. Even if plaintiff's suit is untimely, the doctrine of equitable estoppel applies in this case. Defendant is estopped from raising the affirmative defense that plaintiff's complaint is time-barred. Accordingly, defendant's motion to dismiss plaintiff's complaint as time-barred is denied in part.

## II. Failure to State a Bad Faith Claim

Defendant argues that plaintiff's bad faith claim (Count III) should be dismissed as deficiently pleaded because plaintiff has failed to allege aggravating or outrageous conduct. In

7

order to recover for "the tort of an insurance company's bad faith refusal to settle, the plaintiff must prove (1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct." *Lovell v. Nationwide Mut. Ins. Co.*, 108 N.C. App. 416, 420 (1993). "[B]ad faith means not based on honest disagreement or innocent mistake." *Id.* at 421 (quotations omitted); *See Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387, 396 (1985). "Aggravated conduct may be shown by fraud, malice, gross negligence, insult, rudeness, oppression, or wanton and reckless disregard of plaintiff's rights." *Lovell*, 108 N.C. App. at 422.

Plaintiff asserts in its complaint that defendant acted in bad faith by refusing to provide payment for damages allegedly covered by the insurance contract. Plaintiff describes conversations had between plaintiff and defendant, through defendant's adjuster Sedgwick, and asserts that defendant's investigation was grossly negligent and reckless. Plaintiff alleges that defendant intentionally undervalued plaintiff's claim. Defendant does not appear to dispute that there was a valid claim. Plaintiff has stated facts that could lead the plausible inference that defendant acted in bad faith or with gross negligence. At this stage in the litigation, plaintiff has stated a bad faith claim upon which relief could be granted. The Court is confident that this claim could be resolved well before trial after further motions are filed. Accordingly, at this stage, defendant's motion to dismiss Count III is denied in part.

## II. Cognizable Relief

Defendant seeks to dismiss several types of relief requested by plaintiff. First, defendant challenges plaintiff's ability to recover attorney's fees on its breach of contract claim. For a breach of contract claim, "[a]ttorney's fees clearly can be recovered in situations, for example, where an insurer acts in bad faith in denying coverage or where recovery of fees is otherwise authorized by contract or statute" *Collins & Aikman Prod. Co. v. Hartford Acc. & Indem. Co.*, 125 N.C. App.

8

412, 415 (1997). At this stage of the litigation, plaintiff has stated a claim for bad faith. It is premature to dismiss a request for this relief at this time.

Second, defendant challenges plaintiff's ability to recover compensatory damages, consequential damages, punitive damages, pre-judgment interest, and costs of this action for plaintiff's Unfair and Deceptive Trade Practices ("UDTPA") claim. "A plaintiff may choose between either (1) trebled compensatory damages and fees and costs for UDTPA violations pursuant to N.C.G.S. § 7516 or (2) untrebled compensatory damages and fees and costs under UDTPA and punitive damages for a state law claim pursuant to N.C.G.S. § 1D-15." *SouthWood v. CCDN, LLC*, No. 7:09-CV-183-F, 2016 WL 1389596, at *5 (E.D.N.C. Apr. 7, 2016). At this stage in the litigation, it is premature to dismiss the request for relief.

Third, defendant challenges plaintiff's ability to recover compensatory damages, consequential damages, pre-judgment interest, and costs of this action for plaintiff's bad faith claim. North Carolina law instructs courts "to examine the nature of the contract itself, the absence of a provision in the contract providing for such damages" to determine whether certain types of damages are available in an insurance breach of contract case. *Blis Day Spa, LLC v. Hartford Ins. Grp.*, 427 F.Supp.2d 621, 639 (W.D.N.C. 2006) (internal quotations omitted). It is premature to dismiss a request for this relief at this time. Accordingly, defendant's motion to dismiss certain types of requested relief is denied in part without prejudice.

### III. Identity of the Plaintiff

Defendant requests a statement clearly identifying the pleader or pleaders that seek relief. Bald Head Island Limited, LLC and Mitchell Island Investments, Inc. appear as a singular plaintiff in plaintiff's complaint and yet appear to be two separate entities. Accordingly, defendant's request for a filing pursuant to Rule 12(e) of the Federal Rules of Civil Procedure is granted in part.

9

## CONCLUSION

Accordingly, defendant's motion to dismiss [DE 7] is DENIED WITH PREJUDICE IN PART as to defendant's time-barred argument and request to dismiss count III. Defendant's motion is DENIED WITHOUT PREJUDICE IN PART as to defendant's request to dismiss certain types of relief requested in the complaint. Defendant's motion is GRANTED IN PART as to defendant's request for a clarifying statement regarding the identity of the "plaintiff." Plaintiff is DIRECTED to file a statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure clarifying the number of plaintiffs and which plaintiff is seeking which relief.

SO ORDERED, this  2⁄  day of June, 2022.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE