THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-177-BO

| | |
|---|---|
| BALD HEAD ISLAND LIMITED, LLC, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| IRONSHORE SPECIALTY INSURANCE ) | |
| COMPANY ) | |
| ) | |
| *Defendant*. ) | |

This cause comes before the Court on defendant's motion for reconsideration pursuant to Federal Rule of Civil Procedure 54(b) or, in the alternative, motion for leave to file an interlocutory appeal. [DE 25]. Plaintiff responded in opposition [DE 29], and defendant replied. [DE 30]. In response to defendant's reply, plaintiff filed a motion to file a sur-reply. [DE 31]. Defendant opposed that motion. [DE 32]. In this posture, the motion is ripe for adjudication. For the following reasons, defendant's motion for reconsideration and defendant's leave to file an interlocutory appeal [DE 25] is DENIED. Plaintiff's motion to file a sur-reply [DE 31] is DENIED.

## BACKGROUND

On or about September 14, 2018, Hurricane Florence damaged certain business property owned by plaintiff, Bald Head Island Limited, LLC. Plaintiff held a commercial property insurance policy effective from March 8, 2019 to March 8, 2019 that allegedly insured plaintiff's damaged business property (8 Marina Wynd, Bald Head Island, North Carolina). Bald Head had paid all premiums on the policy, which was in full force at times relevant to this suit.

1

Case 7:21-cv-00177-BO   Document 33   Filed 12/13/22   Page 1 of 8

Hurricane Florence allegedly caused over $945,000 in direct physical damage to plaintiff's covered property, which caused plaintiff to sustain business income loss to its real estate brokerage and real estate development operations. The civil authorities of Bald Head Island Village restricted access to the insured property for some period of time due to the hurricane conditions. Apart from the physical damage, plaintiff alleged the hurricane denied access to the property; prevented customers, investors, residents, and potential buyers from physically occupying the property; caused the property to be physically uninhabitable to customers, investors, residents, and potential buyers; caused the function of plaintiff's real estate brokerage and real estate development operations to be nearly eliminated or destroyed; and caused a suspension of business operations on the premises. Plaintiff also alleges that it suffered direct physical loss of or damage to its property in the form of diminished value and lost income. As a result of damages sustained to the insured property from Hurricane Florence, plaintiff allegedly sustained a suspension of business operations, sustained losses of business income, and incurred extra expenses for the losses specifically sustained to the real estate brokerage and development operations

Plaintiff promptly notified defendant of its losses. Defendant then assigned the independent adjusting firm (Sedgwick) to investigate and adjust plaintiff's claims. After defendant's purported investigation, defendant issued payments of approximately $702,929 for Loss of Business Income/Extra Expense. Plaintiff alleges that this amount did not include owed policy benefits for lost business income to plaintiff's real estate brokerage and real estate development operations. On November 21, 2019, defendant, through Sedgwick, informed plaintiff that it denied coverage for the business income loss associated with the Developer for Real Estate and Brokerage Real Estate portion of the claim. On December 19, 2019, plaintiff informed defendant that its denial of

coverage was improper. The parties corresponded from November 2019 through August 2020, disagreeing on whether the policy covered the claimed damage.

Plaintiff alleged that defendant excluded coverage for the loss of business income incurred as a result of unfavorable business conditions caused by the impact of a covered cause of loss. At some point, plaintiff retained the accounting services of Pyxis to prepare an analysis of the lost business income, including lost real estate revenue, less non-continuing expenses. Pyxis estimated plaintiff's financial loss of real estate revenue at a total amount of $1,231,971. Plaintiff alleges that defendant failed to investigate the damage properly and ignored plaintiff's evidence.

On September 10, 2021, plaintiff filed this suit in Brunswick Superior Court. Plaintiff alleged three causes of action: breach of contract (Count I), violation of North Carolina's Unfair and Deceptive Trade Practices Act (Count II), and breach of the common law obligation of good faith and fair dealing (Count III). Defendant removed this case to federal court based on diversity jurisdiction on October 18, 2021. Three days later, defendant filed a motion to dismiss plaintiff's complaint. [DE 7]. Plaintiff responded in opposition, and defendant replied. A hearing on the motion to dismiss was held before the undersigned on June 16, 2022 in Elizabeth City, North Carolina. Among other things, defendant argued that plaintiff's suit was time-barred by the applicable statute of limitations. In its previous Order, this Court denied defendant's motion to dismiss, finding defendant was equitably estopped from making that time-barred argument. [DE 20].

This is before the Court on defendant's motion for reconsideration of that Order pursuant to Federal Rule of Civil Procedure 54(b) or, in the alternative, motion for leave to file an interlocutory appeal. [DE 25]. Bald Head opposed defendant's motion [DE 29], and Ironshore Insurance replied. [DE 30]. Bald Head filed a motion for leave to file a sur-reply [DE 31], which

3

Ironshore opposed. [DE 32]. For the following reasons, the defendant's motion [DE 25] and the plaintiff's motion are denied.

## DISCUSSION

**Motion to reconcisder**

Rule 54(b) of the Federal Rules of Civil Procedure provides that a court may revise any order entered prior to entry of final judgment. The decision to do so lies within the discretion of the court, which is not bound by the strict standards applicable to requests to reconsider final judgment, but which should be guided by the principles of the doctrine of law of the case. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). Motions to reconsider interlocutory orders are "disfavored and should be granted sparingly." *Wootten v. Commonwealth of Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) (internal quotation and citation omitted). "[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (internal quotation, alterations, and citation omitted). Here, there has been no subsequent trial and no change in the applicable law. And because there was no "clear error causing manifest injustice," plaintiff's motion for reconsideration must be denied. *Id.*

Ironshore urges the Court to reconsider its Order finding Ironshore is equitably estopped from arguing plaintiff's suit is time-barred. A "defendant may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." *Hatcher v. Flockhart Foods, Inc.*, 589 S.E.2d 140, 142 (N.C. App. 2003) (quotation omitted). "The basic question in determining whether an estoppel exists is

4

whether . . . defendant's actions have lulled plaintiff into a false sense of security and so induced him not to institute suit in the requisite time period." *Turning Point Indus. v. Global Furniture, Inc.*, 643 S.E.2d 664, 668 (N.C. App. 2007) (quotation omitted). Ironshore Insurance raises four points to support its motion reconsideration, essentially rehashing arguments the Court has previously considered.

First, Ironshore explains that North Carolina law does "not permit equitable estoppel based upon regular claim adjustment activities or conduct occurring after a suit limitation has expired." [DE 26 at 3]. Because Ironshore denied Bald Head's claim after the suit limitation had ended, Ironshore argues the "Court's Order improperly relied exclusively upon Ironshore's denial of the insurance claim . . . .to justify estoppel." [DE 26 at 3]. However, North Carolina law *does* permit equitable estoppel when the defendant's delay is the reason why plaintiff did not have a claim until after the suit limitations period lapsed. *See Eckard v. Smith*, 603 S.E.2d 134 (N.C. App. 2004). Here, Bald Head promptly filed their insurance claim, but Ironshore did not deny it until after the one-year period had elapsed. Ironshore's delay was why Bald Head did not file suit until after the applicable period. Given these facts, the Court's finding of equitable estoppel was not clear error.

Second, Ironshore argues that plaintiff's complaint fails to plead the necessary elements of equitable estoppel with particularity. [DE 26 at 3; DE 30 at 4]. In North Carolina, it is well established that "conduct that lulls a party into a false sense of security, causing that party to delay filing an action, is sufficient to support a claim of equitable estoppel." *Bankaitis v. Allstate Ins. Co.*, 229 F Supp. 3d 381, 387 (M.D.N.C. 2017). Bald Head is not required to anticipate Ironshore's statute of limitations defense and, therefore, was not required to allege the elements of equitable estoppel in its complaint.

5

Third, for the first time, Ironshore argues that public policy requires the Court to toll the statute of limitations. [DE 26 at 3]. This novel argument was raised in the prior proceedings, and "motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or *new legal theories not argued before the ruling.*" *McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 596 (E.D.N.C. 2009). [DE 29 at 13–14 (emphasis in original)]. Therefore, this Court will not consider those arguments now.

Fourth, Ironshore argues the "time-barred" argument should not have been dismissed *with* prejudice because equitable estoppel is a question of fact. [DE 26 at 3-4]. The Court's ruling was not clear error because "[t]he lapse of time, when properly pleaded, is a technical legal defense." *Nowell v. Great Atl. & Pac. Tea Co.*, 108 S.E.2d 889, 891 (N.C. 1959). As a Court of equity, this Court may "deny the right to assert that defense when delay has been induced by acts, representations, or conduct." *Id.* Ironshore argues that discovery may reveal facts proving Ironshore was not equitably estopped from making the time-barred argument. But Ironshore's hypothetical situation is too attenuated to qualify as one that "causes" manifest injustice. Having considered defendant's arguments, this Court finds no clear error in its previous Order [DE 20], and denies defendant's motion for reconsideration. [DE 26].

**Interlocutory appeal**

In the alternative, Ironshore motions for leave to file an interlocutory appeal. Courts may certify interlocutory orders for appeal when they "involve[] a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also In re Pisgah Contractors, Inc.*, 117 F.3d 133, 136–37 (4th Cir. 1997). A controlling question of law is "a narrow question of pure law whose resolution will be completely dispositive of the

litigation, either as a legal or practical matter, whichever way it goes." *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, *5 (4th Cir. 1989) (unpublished). Additionally, certification of an interlocutory appeal is "appropriate where the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts.'" *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340–41 (4th Cir. 2017) (citation omitted). Interlocutory review is not appropriate where there is a disagreement as to whether there are genuine issues of material fact or "whether the district court properly applied settled law to the facts or evidence of a particular case." *Id.* at 341. The requirements of § 1292(b) are strictly construed. *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). And even if the requirements are satisfied, a district court retains discretion to decline to certify an interlocutory appeal. *See State of N.C. ex rel. Howes v. W.R. Peele, Sr. Trust*, 889 F. Supp. 849, 852 (E.D.N.C. 1995). The moving party bears "the burden of persuading the court that exceptional circumstances justify a departure" from the general policy against piecemeal appeals. *Id.* at 854.

The Court is unpersuaded that certification of interlocutory appeal is warranted in this instance. Essentially, defendants contend that the Court wrongly applied settled law to the facts of this case. But that is not a ground for certification of an interlocutory appeal. *St. John's Episcopal Church v. Cincinnati Ins. Co.*, No. 7:21-CV-00131-BO, 2022 WL 1913010, at *7 (E.D.N.C. June 2, 2022). Many substantial claims remain in this case, and an interlocutory appeal would not materially advance the termination of the litigation. Considering all defendant's arguments, the Court denies defendants' request to certify its prior Order for interlocutory appeal. For the reasons above, defendant's underlying motion [DE 25] is denied.

**Sur-Reply**

Finally, after receiving Ironshore's reply [DE 30], Bald Head filed a motion to file a sur-reply [DE 31]. Ironshore responded in opposition. [DE 38]. Considering the fact that defendant's motion has been denied, and upon full consideration of the record, the Court finds that defendant's reply. [DE 30] does not warrant a sur-reply, and defendant's motion [DE 31] is DENIED.

## CONCLUSION

Accordingly, defendants' motion for reconsideration and leave to file an interlocutory appeal [DE 25] is DENIED. Plaintiff's motion to file a sur-reply [DE 31] is DENIED.

SO ORDERED, this ____ day of December 2022.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE